[Crim. No. 14749. In Bank. Oct. 23, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
LAWRENCE AKIN JACKSON, Defendant and Appellant.

**COUNSEL**

Jeffrey J. Joseph, under appointment by the Supreme Court, and Joel R. Strote for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**THE COURT.**—Lawrence Akin Jackson was convicted of first degree murder and sentenced to death. The judgment was affirmed. (*People* v. *Jackson* (1963) 59 Cal.2d 375 [29 Cal.Rptr. 505, 379 P.2d 937].) Thereafter, under the compulsion of *People* v. *Morse* (1964) 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810], the judgment was reversed insofar as it imposed the death penalty and was affirmed in all other respects. (*In re Jackson* (1964) 61 Cal.2d 500 [39 Cal.Rptr. 220, 393 P.2d 420].) Upon retrial of the penalty issue, defendant's punishment was again fixed at death. On appeal the judgment imposing the death penalty was reversed under *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361]. (*People* v. *Jackson* (1967) 67 Cal.2d 96 [60 Cal.Rptr. 248, 429 P.2d 600].) When the penalty issue was tried the third time, the punishment was once more fixed at death. The case is before us on automatic appeal. (Pen. Code, § 1239, subd. (b).)

In *People* v. *Anderson* (1972) 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880] this court held the death penalty violated our state constitutional prohibition against cruel or unusual punishment. (Cal. Const., art. I, § 6.)[1] In *Furman* v. *Georgia* (1972) 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 2726], the United States Supreme Court ruled that imposition of the death penalty in the circumstances of this case contravened the federal Constitution. As defendant's death penalty must therefore be set aside, it is unnecessary to consider the claims of error arising out of his third penalty trial.

---

[1]For the effect of article I, section 27 of the California Constitution on this issue, see *People* v. *Murphy* (1972) 8 Cal.3d 349, 352 [105 Cal.Rptr. 138, 503 P.2d 594], footnote 2.

■ Attacking the judgment on the issue of guilt, defendant contends he was denied effective assistance of counsel at the guilt phase of his initial trial because his attorney failed to raise the defense of diminished capacity. Since the judgment on the issue of guilt is final, our consideration of this argument is governed by the rules applicable to collateral relief. (*People* v. *Jackson, supra,* 67 Cal.2d 96, 99; *People* v. *Polk* (1965) 63 Cal.2d 443, 448 [47 Cal.Rptr. 1, 406 P.2d 641].)

■ Denial of the right to effective assistance of counsel is one trial error which is cognizable on collateral review whether or not it was raised on appeal. (*In re Hochberg* (1970) 2 Cal.3d 870, 875 [87 Cal.Rptr. 681, 471 P.2d 1]; see *In re Lopez* (1970) 2 Cal.3d 141, 151 [84 Cal.Rptr. 361, 465 P.2d 257].) However, any significant delay in seeking collateral relief on this ground must be fully justified. (See *In re Wells* (1967) 67 Cal.2d 873, 875 [64 Cal.Rptr. 317, 434 P.2d 613]; *In re Streeter* (1967) 66 Cal.2d 47, 52 [56 Cal.Rptr. 824, 423 P.2d 976]; *In re Shipp* (1965) 62 Cal.2d 547, 553 [43 Cal.Rptr. 3, 399 P.2d 571]; *In re Swain* (1949) 34 Cal.2d 300, 304 [209 P.2d 793].)

In *In re Saunders* (1970) 2 Cal.3d 1033 [88 Cal.Rptr. 633, 472 P.2d 921], the defendant also contended his trial counsel had been ineffective in failing to raise the defense of diminished capacity. We held a five-year delay in seeking collateral relief was sufficiently explained where the defendant alleged "that he had only had a ninth grade education and was without experience or education in law; that until October 1966 he did not know that trial counsel had received medical records prior to or during the trial; that even after he received such information he was unable to make use of it because he did not have access to his complete medical records and because he was unaware of the applicable law; that he did not learn of the doctrine of diminished capacity until December 1967 and immediately thereafter assiduously sought the assistance of new counsel in securing and reviewing the medical and psychiatric records relevant to the issue now presented; and that the said records were not acquired until early in 1970 when petitioner was able to obtain the services of his present attorney. . . ." (*Id.* at pp. 1040-1041; see *In re Perez* (1966) 65 Cal.2d 224, 228 [53 Cal.Rptr. 414, 418 P.2d 6]; *In re James* (1952) 38 Cal.2d 302, 309 [240 P.2d 596].)

■■ Defendant, by contrast, presents absolutely no justification for his 11-year delay in attacking the judgment of guilt on this ground. The evidence of diminished capacity defendant now relies on is the evidence introduced at his third penalty trial. That evidence is largely a repetition of evidence originally produced at either defendant's trial in 1952 for a

similar offense or the first penalty trial in this proceeding. Therefore, defendant's failure to raise this issue when he was before us on three separate occasions since conviction is inexcusable. For the same reason we decline to consider defendant's contention we should exercise our authority under section 1181, subdivision 6, of the Penal Code to reduce the degree of the murder to second degree on the basis of the evidence of diminished capacity produced at the third penalty trial.

The judgment, insofar as it provides for the penalty of death, is modified to provide a punishment of life imprisonment and, as so modified, is affirmed.

Mosk, J., did not participate.

**McCOMB, J.**—For the reasons expressed in my dissenting opinion in *People* v. *Anderson,* 6 Cal.3d 628, 657 [100 Cal.Rptr. 152, 493 P.2d 880], I dissent from the modification of the judgment to provide a punishment of life imprisonment instead of death. (See Cal. Const., art. I, § 27.)